UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-CV-539-KKC

TOMA YOURVONNO BATES                                                                                           PLAINTIFF

VS:                              **MEMORANDUM OPINION AND ORDER**

LOUIS ELWOOD, ET AL.                                                                                            DEFENDANTS

Plaintiff Toma Yourvanno Bates, who is confined in the United States Penitentiary-Lee ("USP-Lee") in Jonesville, Virginia has filed a *pro se* civil rights complaint asserting claims under: (1) 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and (2) the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §§1346(b), 2671-2680. The events about which the plaintiff complains occurred while he was confined in the Federal Correctional Institution in Manchester, Kentucky ("FCI-Manchester").

The plaintiff has also filed a motion to proceed *in forma pauperis*. The Court will address that motion by separate order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997). As this is a *pro se* complaint, it is held to less stringent standards than one drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## NAMED DEFENDANTS

The named defendants in this action are: (1) Louis Elwood, whom the plaintiff identifies as "Senior Staff Member" at FCI-Manchester; (2) Gary Price, whom the plaintiff identifies as a "Staff Member" at FCI-Manchester; and (3) M. Corona, whom the plaintiff identifies as "Factory Manager Trainee" at FCI-Manchester. To the extent that the plaintiff asserts a claim under the FTCA, the correct defendant as to that claim would be the United States of America. *Allgeier v. United States*, 909 F.2d 869 (6th Cir. 1990).

## CLAIMS

The plaintiff alleges that on September 12, 2005, the named defendants were recklessly indifferent to his health and safety and violated his Eighth Amendment right to be free from cruel and unusual punishment. Alternatively, the plaintiff asserts a claim of negligent supervision under the FTCA.

## RELIEF

The plaintiff seeks unspecified monetary damages and release from custody.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff states that on September 12, 2005, he was physically assaulted with hammer by another inmate and that as result of the assault, he has sustained serious bodily injury. The plaintiff was working at his UNICOR job at FCI-Manchester at the time of the injury. He claims that the named defendants were responsible for not having provided a safe working environment and not having taken measures to prevent the assault (*i.e.*, having ensured that the inmate who assaulted him had no access to a dangerous implement such as a hammer). Bates alleges that he suffered personal injuries as a result of the inmate's assault on him.

The plaintiff describes the theory of liability surrounding his injury as being that prison staff "failed to supervise a dangerous tool" (*see* November 11, 2005 BP-9 BOP Administrative Remedy). He claims under *Bivens* that in failing to anticipate and/or take necessary preventive measures, the defendants violated his Eighth Amendment rights by creating a safety hazard.

In accordance with a Deficiency Order entered on December 14, 2006 [Record No. 4], the plaintiff has recently supplemented his initial filing with some evidence of what appears to be partial compliance with the Bureau of Prisons ("BOP") administrative remedy process, 28 C.F. R. §542.10-.19 (2006), and with his other claims under the FTCA [Record No. 5]. The Court will discuss whether the plaintiff has demonstrated adequate exhaustion of both claims.

### DISCUSSION
### 1. *Bivens* Claim

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal prisoners bringing actions concerning prison conditions, and any other incident to prison life, such as excessive force, to exhaust all available administrative remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. 122 S.Ct. 983 (2002); *Lavista v. Beeler*, 195 F,3d 254, 256 (6th Cir. 1999); *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir. (Minn.) November 2, 2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust administrative remedies before bringing suit under *Bivens* based on inadequate conditions of confinement).

The multi-step administrative remedies available to inmates confined in BOP institutions are set out in 28 C.F. R. §542.13-15.[1] The preliminary issue before the Court is whether or not the

---

[1] Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. *See* §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11]. *See* §542.15.

3

plaintiff has administratively exhausted his *Bivens* claims under the regulations set forth in 28 C.F.R. §542.13-15.

The exhibits attached to the plaintiff's filing [Record No. 5] reveal that on November 11, 2005, the plaintiff filed an administrative remedy BP-9 with the former Warden of FCI-Manchester, Charles E. Samuels, Jr.[2] On December 29, 2005, then-Warden Samuels denied the BP-9 "Request for Administrative Remedy" (I.D. #396597-F1). He disputed the claim that prison staff had failed to render proper and necessary medical care and that the plaintiff was being deprived of further medical evaluation. Warden Samuels responded that the plaintiff was immediately given all appropriate medical care (tests, medications, and follow-up treatment) in connection with his injuries. The Warden stated that the test results revealed no neurological injury. He denied all allegations of prison staff misconduct.

On December 28, 2005, the plaintiff filed an appeal to the BOP's Mid-Atlantic Regional Office (MARO) in which he claimed that he had sustained extensive personal injuries as a result of the prison staff's inattentiveness and disregard of his condition. On January 26, 2006, K. M. White, Regional Director of the MARO, denied the appeal (Administrative Remedy #396597-R1). White did not address the issue of staff liability, but he did set forth a detailed discussion outlining the medical care rendered to the plaintiff as a result of his injuries. White agreed with Warden Samuels that the plaintiff was afforded various forms of immediate and necessary medical care, and that the plaintiff had not suffered any type of permanent injury.

---

The administrative procedure includes established response times. §542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. If the inmate does not receive a response within the allotted time, including extension, he may consider the absence of response as a denial at that level. *Id.*

[2] The current warden of FCI-Manchester is Jeff Grondolsky.

4

White also explained to the plaintiff that his physical condition did not qualify him for a "compassionate release" from federal custody under 18 U.S.C. §3582(c)(1)(A)(i). White stated that Bates' condition was not terminal. White noted that the plaintiff did not meet the other criteria for consideration of a "compassionate release" under the statute.

The plaintiff's exhibits reveal two attempts to appeal to the BOP's next administrative level, the Central Office. The first attempt was with regard to Administrative Remedy No. 396597-A2. The Central Office issued a "Rejection Notice" on March 21, 2006. This "Rejection Notice" informed the plaintiff that he had not submitted his BP-11 appeal on the proper form.[3] In light of that error, the BOP gave the plaintiff 15 days (from March 21, 2006) to correct his filing mistake.

The record does not, thus far, reflect that the Central Office received an amended BP-11. The plaintiff made the following handwritten notation on his March 21, 2006 "Rejection Notice" from the MARO:

>       Didn't receive in mail until 3/27/06
>       Mailed back out 4/03/06
>     * Different Remedy I.D. Numbers

The second attempt is reflected by another "Rejection Notice" from the MARO, also dated March 21, 2006. This "Rejection Notice" refers to a **different** Administrative Remedy Identification Number, being # 407252-A1. The subject matter was identified as "medical care - delay or access to." In that March 21, 2006 "Rejection Notice," the MARO informed the plaintiff that he had failed to attempt an informal resolution prior to filing an administrative remedy, or if he did, he did not provide the necessary evidence verifying such attempt. At the bottom of this "Rejection Notice," the plaintiff made the same handwritten notation he made on the "Rejection Notice" sent concerning

---

[3] The subject matter described in Administrative Remedy I.D. #396597-A2 is "Other Medical Matters."

Administrative Remedy # 396597:

> Didn't receive in mail until 3/27/06
> Mailed back out 4/03/06
> * <u>Different Remedy I.D. Numbers</u>

In his filings [Record No. 5], the plaintiff contends that the BOP has confused the issue of his administrative compliance by assigning two different Administrative Remedy Identification Numbers to his claims, when they were really all intended to be one and the same. The only additional document from the BOP's Central Office is a subsequent "Rejection Notice" dated April 17, 2006, regarding Administrative Remedy # 407252-A3. In this notice, the BOP reiterates its assessment from March 21, 2006; to wit, that the plaintiff had not informally exhausted his claims by filing a BP-9 administrative remedy request with the warden.

2. <u>Disposition of *Bivens* Claim</u>

The Court has no documentation regarding Administrative Remedy #407252 other than the two BP-11 "Rejection Notices" from the BOP's Central Office level. The Court is unable to determine if, in fact, this claim has been fully exhausted because the Court does not know what the nature of the claim is or was. It appears that the plaintiff complained about "delay or access to" medical care in Administrative Remedy #396597, so the Court is not able to determine why a different claim number was assigned by the BOP.

It appears that both claims may be the victim of failure of incomplete exhaustion, for reasons discussed herein, but the Court wants to be sure. The United States is directed to file a brief response as to what the underlying claim was in Administrative Remedy # 407252, when the plaintiff filed the rejected BP-11. It is also directed to respond as to whether or not the plaintiff ever filed an amended BP-11 form as to the rejected Administrative Remedy #396597. He states that he did so

on April 3, 2006. The United States is directed to provide the Court with a copy if it has same in its possession.

### 3. FTCA CLAIMS

The plaintiff submitted as part of his filing [Record No. 5] an FTCA administrative claim with the BOP. His claim is dated May 30, 2006. His filings reveal that the Post Office processed his certified mailing of the claim on May 31, 2006, and that a BOP employee signed for receipt of the filing of the FTCA claim on June 5, 2006. The plaintiff's complaint is dated December 5, 2006. The envelope in which he filed his complaint was stamped and processed by the prison where he is confined (U.S.P. Lee County, Virginia) on December 6, 2006. Under 28 USC §2675(a), a claimant has six months in which to file suit in federal court after receiving notice that an FTCA claim has been denied.

Here, the plaintiff claims that he received no response from the BOP as to his May 30, 2006 FTCA claim. He claims the BOP has "defaulted" on his FTCA claim. The statute at issue, 28 U.S.C. §2675(a), actually provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. **The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.** The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

28 U.S.C. §2675(a).

4.  Disposition of FTCA Claim

Under the language, the BOP's apparent failure to respond is <u>not</u> a default of the claim. It is instead deemed as a final denial of the FTCA claim. The record requires more development in order to assess the validity of the plaintiff's FTCA claims, especially in light of the fact that it does not appear that the BOP ever provided the plaintiff with a written response to his FCTA claim. The Court will order the United States to respond to the FTCA claim, as to the issues of: (1) statute of limitations, if the United States believes there is a dispute as to the timely filing of an FTCA claim under the prisoner mail box rule, and (2) underlying liability, if any, as to the plaintiff's claims of negligent supervision under the FTCA.

CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)   The United States of America will be added as an additional defendant to this proceeding and the Clerk of the Court will so note the joinder of this defendant as to the plaintiff's FTCA claim.

(2)   The defendants are directed to file a response to both the plaintiff's Eighth Amendment *Bivens* claims **and** the plaintiff's FTCA claims of negligence.

(3)   The London Clerk is directed to issue summons for the Bureau of Prisons, the Attorney General of the United States of America, and for the United States Attorney for the Eastern District of Kentucky.

(4)   The London Clerk's Office shall prepare as many copies of the complaint as there are summonses issued and complete the requisite number of USM Form(s) 285.

(a)   If insufficient information exists to sufficiently or effectively complete

any summons or USM Form 285 regarding any defendant, the Clerk shall promptly make a clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service.

(b) The London Clerk's Office shall forward by certified mail the following documents: (i) the summonses issued; (ii) the requisite number of USM Forms 285; (iii) the requisite number of complaint copies; (iv) the requisite number of copies of this Opinion and Order; and (v) any other documents necessary to effectuate service.

(c) The London Clerk's Office shall enter the certified mail receipt into the record and a notation that the delivery to the USM Office of the complaints, summonses, USM Forms 285, and any other attachments have been effectuated, and the date upon which they were effectuated.

(d) The USM Office shall serve a summons, complaint copy, and copy of this Order on the defendants to this action; service to be made by certified mail, return receipt requested, or by personal service.

(e) The USM Office shall make a return report to the Court of whether the summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order.

(5) The plaintiff shall keep the Clerk of the Court informed of his current mailing address. **Failure to notify the Clerk of any address change may result in a dismissal of this case**.

(6) For every further pleading or other document he wishes to submit for consideration by the Court, the plaintiff shall serve upon each defendant, or, if appearance has been

entered by counsel, upon each attorney, a copy of the pleading or other document. The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel. **If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk, or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.**

Dated this 8th day of January, 2007.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge