UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-CV-539-KKC

TOMA YOURVONNO BATES                                                                                    PLAINTIFF

VS:                            **MEMORANDUM OPINION AND ORDER**

LOUIS ELWOOD, ET AL.                                                                                    DEFENDANTS

Currently before the Court for consideration are the following pleadings:

(1)   The "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" [Record No. 24], filed by the defendant, the United States of America;

(2)   The "Demand for Jury Trial" [Record Nos. 32 and 42] filed by Toma Yourvanno Bates, the *pro se* plaintiff; and

(3)   the "Motion to Grant Relief of Unspecified Monetary Damages and Release from Custody" [Record No. 37] filed by the *pro se* plaintiff, in response to the United States' Motion to Dismiss or in the Alternative, Motion for Summary Judgment"

PROCEDURAL HISTORY
I.   The Complaint

Plaintiff Toma Yourvanno Bates, who is currently confined in the United States Penitentiary located in Florence, Colorado ("USP-Florence") filed a *pro se* civil rights complaint on December 8, 2006. He asserted claims under: (1) 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and (2) the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §§1346(b), 2671-2680. The events about which the plaintiff complains occurred while he was confined in the Federal Correctional Institution in Manchester,

Kentucky ("FCI-Manchester").

The named defendants in this action are: (1) Louis Elwood, whom the plaintiff identifies as "Senior Staff Member" at FCI-Manchester; (2) Gary Price, whom the plaintiff identifies as a "Staff Member" at FCI-Manchester; and (3) M. Corona, whom the plaintiff identifies as "Factory Manager Trainee" at FCI-Manchester. The United States is the proper defendant to a claim asserted under the FCTA. *Allgeier v. United States*, 909 F.2d 869 (6th Cir. 1990).

Plaintiff alleged in the complaint that on September 12, 2005, another FCI-Manchester inmate physically assaulted him with hammer and that as result of the assault, he has sustained serious bodily injury. The plaintiff was working at his UNICOR job at FCI-Manchester at the time of the injury.

Bates alleged that the named defendants were recklessly indifferent to his health and safety for not having provided a safe working environment and not having taken measures to prevent the assault (*i.e.*, having ensured that the inmate who assaulted him had no access to a dangerous implement such as a hammer). He further alleged that the defendants had denied him prompt and necessary medical treatment for his injuries.

He claimed that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Alternatively, the plaintiff asserted a claim of negligent supervision under the FTCA. The plaintiff sought unspecified monetary damages and release from custody.

## II. January 8, 2007 Memorandum Opinion and Order

The plaintiff filed supplemental documentation of his efforts to administratively exhaust his claims [Record No. 5] The Court thereafter conducted an initial screening of the plaintiff's complaint plaintiff and on January 8, 2007, entered a Memorandum Opinion and Order addressing

the status of the claims as of that date [Record No. 8]. In that Opinion and Order, the Court discussed in detail the various steps which the plaintiff's filings indicated that he had undertaken.[1] The Court will not reiterate in this Order the detailed analysis of the plaintiff's filings as discussed in the January 8, 2007 Opinion and Order.

Summarizing its conclusions, it was unclear to the Court whether the plaintiff's Administrative Remedy # 396597 (concerning the alleged denial of proper medical care) was fully exhausted through the Bureau of Prisons ("BOP") administrative remedy process, set forth in 28 C.F.R. § 542.13-15 [*See* Record No. 8, pp. 5-6].[2] The Court noted that the plaintiff had asserted that the BOP had confused the issue of his administrative compliance by assigning two different Administrative Remedy Identification Numbers to his claims, when they were really intended to be one and the same [*Id.*, p.6].

The Court discussed the requirement that all prisoner claims challenging the conditions of confinement be properly and fully exhausted through all levels of BOP's process [*Id.*, pp. 3-4] The plaintiff's filings did not appear to be complete on the issue of exhaustion, as to either Claim # 396597 or Claim # 407252. Accordingly, the Court directed the BOP to respond to the complaint as to the exact steps undertaken by the plaintiff.

---

[1] The Court will not reiterate its detailed analysis of the plaintiff's exhaustion efforts here.

[2] The Court noted that on March 21, 2006, the BOP sent the plaintiff two separate "Rejection Notices" (each containing different claim numbers: the first being Claim # 396597 and the second being Claim # 407252) [Record No. 8, p.5]. Both appeared to relate to the same "denial of medical treatment" claim. *Id*. The Court was unable to ascertain why the BOP may have assigned two different claim numbers, and that it did not appear at that time the plaintiff had responded to either or both Rejection Notices.
 The Court noted that at the first two levels of the exhaustion process, the BOP had denied the plaintiff's Claim # 396597. The BOP's response to the claims was that the plaintiff received numerous forms of appropriate and necessary medical care.

III. BOP's Response [Record No. 24-2]

A. Eighth Amendment Claims
(1). Remedy Series 396597

In support of its Motion to Dismiss, the BOP submitted under seal the Declaration of Carolyn Lanphear, Administrative Remedy Specialist with the BOP's Office of General Counsel in Washington, D.C. [*See* Lanphear Declaration, Record No. 25, Exhibit C]. Based upon Lanphear's Declaration, the BOP contends that the plaintiff failed to exhaust all available administrative remedies with respect to his Eighth Amendment claims.

Lanphear states that the plaintiff initiated a series of administrative remedies to which the BOP assigned the number "396597," the subject matter of which was a request for additional medical treatment [*Id*., ¶ 5]. Lanphear states that the BOP's Central Office rejected the plaintiff's BP-11 appeal for two reasons. First, she states that the plaintiff failed to attach to his BP-11 Central Office appeal the copies of his BP-9 and BP-10 remedies [*Id*.]. For that reason, the BOP issued a Rejection Notice, Remedy No. 396597-**A1**.

Second, she states that the plaintiff did not submit the BP-11 appeal on the proper BP-11 form [*Id*]. She states that for that reason, the BOP issued a second Rejection Notice, labeled as Remedy No. 396597-**A2**. Lanphear explains that although the BOP gave the plaintiff twenty (20) days to cure both defects, he failed to do so [*Id*., ¶ 6].[3]

---

[3] Although Lanphear refers to two separate Rejection Notices as to Remedy Series 396597, the BOP did not provide the Court with a copy of either Rejection Notice 396597-A1 *or* Rejection Notice 396597-A2 as attachments to Lanphear's Declaration.
  The plaintiff did a bit better. He provided one Rejection Notice dated March 21, 2006. That Rejection Notice, identified as Remedy No. 396597-**A2** (*not* A1), states that the BP-11 appeal (concerning "other medical matters") was being rejected because the BP-9 and BP-10 appeals were not attached. Rejection Notice-**A2** is docketed as attachment 5-2 to the plaintiff's earlier submission entitled "Commercial Affidavit of Truth" [*See* Rejection Notice, Record No. 5-2, p. 16].
  Lanphear states that Rejection Notice-**A1** advised the plaintiff that he had failed to provide copies of his

Lanphear states that both of the two rejected BP-11's relating to remedy series 396597 were mailed back to the plaintiff with specific reasons for the rejections, instructions for curing the defects, and specific time frames for resubmitting the remedies. [*Id.*, ¶ 7]. She states that because of the plaintiff's failure to cure either defect, the BOP National Inmate Appeals Administrator rejected both of the BP-11's in the 396597 series without a response. [*Id.*, ¶ 6].[4]

(2). Remedy Series 407252

Lanphear continues in her Declaration by stating that the plaintiff also filed two other BP-11 remedy requests, 407252-A1 and 407252-A3, directly to the Central Office. [*Id.*, ¶8]. According to Lanphear's Declaration, the remedy clerk at Central Office assigned this remedy series a **new** remedy number - 407252 - "because there were no indications these BP-11s were intended to be appeals of the 396597-F1 and 396597-R1 denials." [*Id.*].

Lanphear states that the subject matter of these requests was "Claims not receiving medical treatment for injuries." [*Id.*]. Lanphear explains that based on the information in the **SENTRY** data, "it appears these two BP-11s were rejected because Plaintiff mailed them directly to Central Office without any attachments indicating he had previously filed an institution-level BP-9 and then a BP-10 appeal." [*Id.*].

---

prior BP-9 and BP-10 appeals. Rejection Notice 396597-**A1** was not filed in the record by either party. Contrary to Lanphear's assertion, Rejection Notice 396597-**A2** does not advise that the plaintiff had used the improper BP-11 form. What it actually said was that the BP-11 appeal was rejected because the plaintiff failed to attach his BP-9 and BP-10 appeals [*See* Record No. 5-2, p.16].

[4] Lanphear explains that prisoner remedies commonly suffer from various defects which require rejection that [*Id.*, ¶ 3]. She states that rejected Central Office BP-11 remedies are mailed back to inmates in their original form with: (1) a cover memo explaining the reason for rejection, and (2) information as to how to resubmit the appeal. [*Id.*] She further explains that copies of rejected remedy requests are not maintained by the BOP. Information on rejected remedies is acquired from information written in the **SENTRY** administrative remedy database. [*Id.*].

The BOP did not provide copies of either: (1) the actual BP-11 submitted by the plaintiff, which the BOP rejected on March 21, 2006, or (2) the referenced Rejection Notices in the 407252 series. The plaintiff provided copies of the two Rejection Notices issued in the 407252 series. These Rejection Notices are marked as exhibits to his earlier submission entitled "Commercial Affidavit of Truth" [*See* Rejection Notices, Record No. 5-2, pp. 17 (3/21/06 Rejection Notice) and 21 (April 17, 2006 Rejection Notice)].

### 3. BOP's Legal Arguments

The BOP argues that because of the defects described above, it properly rejected the plaintiff's BP-11 filings, both in Remedy Series 396597 and Remedy Series 407252. The BOP contends that because of the defects in the exhaustion process, the plaintiff did not fully exhaust or utilize every available administrative remedy to grieve the issues he raised in the complaint [Record No. 24-2, pp. 10-11].

The BOP noted that the Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. § 1997e(a) requires exhaustion of administrative remedies by prisoners regardless of whether monetary and/or injunctive relief is sought. Along with a slew of older cases requiring exhaustion prior to filing a *Bivens* action, rendered by the Sixth Circuit and other courts, the BOP cited *Woodford v. Ngo*, 126 S. Ct. 2378 (2006), which holds that the PLRA requires proper and complete exhaustion of administrative remedies.

### B. FTCA Claim

The BOP has filed under seal the Declaration of Kevin Walasinksi, Senior Attorney at the Consolidated Legal Center [Record No. 25, Exhibit D]. Walasinski states that the plaintiff failed to file the necessary administrative FTCA claim with the BOP concerning either claims of alleged

negligent supervision in UNICOR or claims regarding insufficient medical treatment [*See Id.*, ¶ 2]. The BOP notes that the filing of a preliminary administrative FTCA claim is required by statute, 28 U.S.C. § 2675. Citing *McNeil v. United States*, 508 U.S. 106 (1993) and other cases, the BOP contends that the plaintiff's failure to file an administrative FTCA claim prior to filing this civil action bars him from bringing suit in federal court.

The BOP disputed the validity of the plaintiff's claim that he "appealed" his constitutional claims from the BOP's Office of General Counsel to the Torts Division to the Torts Branch of the Department of Justice [Record No. 24-2, p.14]. First, the BOP argues that an FTCA claim is not properly filed by "appealing" from the BOP's three-step administrative remedy process to the Torts Branch of the Department of Justice. The BOP contends that if this is what the plaintiff did, he failed to establish a proper filing of an administrative FTCA claim [*Id.*]. The BOP denies that it ever received a properly filed FTCA claim.

Second, the BOP notes that the plaintiff filed his complaint on a form designed for asserting constitutional claims under *Bivens*, and comments that the plaintiff failed even to mention the FTCA in his complaint. Third, the BOP contends that the complaint asserts purely constitutional violations against individual BOP staff members, not negligence claims [*Id*].

## IV. PLAINTIFF"S RESPONSE

The plaintiff filed a 15-page response [Record No. 37]. The Court found most of the submission difficult to follow, although it is obvious that the plaintiff made a good faith effort to explain his efforts at exhaustion.[5]

---

[5] Since the plaintiff is a pro se prisoner, the Court is required to make allowances for the confusing presentation of his case.

The response consisted of either incomplete sentences or long, rambling sentences conveyed in a "grocery list" format. The plaintiff punctuated his arguments with words and phrases in capital letters which interrupted the stream of thought. The plaintiff also interspersed in the middle of his arguments numerous legal citations and lengthy excerpts from cases, regulations and statutes, which made following his version of the facts difficult to do, if not impossible, in certain passages. The Court tried to interpret the plaintiff's filing as best it could.

### A. BOP Administrative Exhaustion

Regarding the exhaustion of remedies through the BOP's three-step process, the plaintiff appears to argue that the BOP unilaterally assigned a new Remedy Number (# 407252) to his BP-11, when it should have assigned the same Remedy Number already in use in the previous steps of the administrative remedy process (# 396597). Summarized, it appears that he argues that the BOP's subsequent rejections of his BP-11 appeal was unwarranted and unjust.

### B. FTCA Claims

On the issue of the FTCA claim, the plaintiff alleges that on May 31, 2006, he did in fact submit an FCTA administrative claim [Record No. 37-1, p. 2]. He attached as an exhibit what he states is a copy of his May 31, 2006, FTCA Administrative Tort Claim [Record No. 37-2, p. 12].[6] That claim is directed to the "Director of Tort Branch, U.S. Dept of Justice, Wash. D.C." [Id.]. Plaintiff has also attached a copy of a certified mail receipt dated June 5, 2006, which he claims verifies the delivery of the document and the government's receipt of same [*Id.*, p. 11]. The green

---

[6] The completed FCTA claim form, which the plaintiff attached, is actually dated at the bottom as May *30*, 2006.

card and the certified mail receipt indicate that the filing was addressed to the following address: the "Director of Tort Branch, U.S. Dept of Justice, Wash. D.C." [*Id*].

The plaintiff also attached a series of letters concerning this FCTA claim form. The first is a letter dated January 9, 2007, addressed to the plaintiff [Record No. 37-2, p. 14]. The letter is from Cheryl White, FTCA Claims Adjuster, Torts Branch, Civil Division of the Department of Justice ("DOJ"). White acknowledged receipt of the plaintiff's administrative tort claim filed dated May 30, 2006. She states that she is forwarding that claim to the BOP for processing. No mention was made of the lapse of time between May 30, 2006 and January 9, 2007.

The second letter is from Phyllis Pyles, Director of the Torts Branch, Civil Division of the DOJ [Record No. 37-2, p. 15]. The letter, dated January 9, 2007, is addressed to the Honorable Joyce Zoldak, Associate General Counsel of the BOP. Pyles stated that because the claim arose out of activities at the BOP, she was forwarding the claim to Zoldak's office for processing and further communications [*Id*.]. No mention or explanation was made of the lapse of time between May 30, 2006 and January 9, 2007.

The third letter is dated March 22, 2007, and is from Michelle T. Fuseyamore, BOP Regional Counsel to the plaintiff [Record No. 37-2, p.18]. In that letter, Fuseyamore denied the plaintiff's FTCA claim because as a prison-job related injury, the claim was governed by 18 U.S.C. § 4126, the Inmate Accident Compensation Act ("IAC"). Fuseyamore informed the plaintiff he should contact the staff in the Safety Department to obtain information regarding the procedures for filing a claim under the IAC [*Id*].

## DISCUSSION

This case has presented a confusing set of facts concerning whether the plaintiff has

9

adequately and fully exhausted both the *Bivens* and the FCTA claims. While the BOP provided some helpful information as to the rejected BP-11(s), the Court would have benefitted from a chronological time-line specifying **what** was filed and **when**, and as well as marked copies of each document, beginning (at a minimum) with the plaintiff's various rejected BP-11's.[7]

### 1. Chronology of Eighth Amendment Claims

Even with the aid of Carolyn Lanphear's Declaration, the Court had to expend a considerable amount of time reconstructing what happened after the BOP Mid-Atlantic Regional Office rejected the plaintiff's BP-10 appeal. Based on what was filed in the record, the Court determines that the following events occurred:

(1) **December 27, 2005**: Warden Samuels rejected the merits of the plaintiff's BP-9 appeal demanding additional medical treatment for injuries sustained when he was hit on the head with a hammer while working at his UNICOR job at FCI-Manchester [Record No. 5-2, p. 11 and Record No. 37-2, p.3].

(2) **January 26, 2006**: K.M. White, Director of the BOP Mid-Atlantic Regional Office, rejected the merits of the plaintiff's BP-10 appeal demanding a compassionate release based on his medical condition [Record No. 5-2, pp. 13-14 and Record No. 37-2, pp 5-6].

(3) **March 5, 2006**: The plaintiff completed his BP-11 appeal to the Central Office, complaining about pain in his head and neck, and emotional distress, caused by the inmate assaulting him with a hammer. He claimed that the BOP had been negligent in its supervision of the inmate. It appeared that the plaintiff continued to demand different or additional medical treatment

---

[7] It is not clear from the record why the BOP filed the Lanphear and Walasinski Declarations under seal as Record No. 25. The BOP offered no reason for that action.

for his head injury [Record No. 5-2, pp. 19-20 and Record No. 37-2, pp.7-8].

(4)  **March 21, 2006**:  The Central Office issued a "Rejection Notice" on March 21, 2006. The Remedy Number assigned was # 396597-**A2** and the subject matter was listed as "Other Medical Matters."[8]  This "Rejection Notice" states that the plaintiff had not submitted his BP-11 appeal on the proper form.  The BOP gave the plaintiff 15 days (from March 21, 2006) to correct his filing mistake [Record No. 5-2, pp. 16; Record No. 37-2, p. 9].

(5)  **March 21, 2006**:  The Central Office issued *another* "Rejection Notice" on March 21, 2006.  The Remedy Number assigned this time was # 407252-A1 and the subject matter was listed as "Medical Care- Delay or Access To."

This "Rejection Notice" states that the plaintiff had either not attempted informal resolution **or** if he had, he had not submitted evidence of his attempt at informal resolution.  The plaintiff was instructed to first file a BP-9 with the warden  [Record No. 5-2, pp. 17].

(6)      **March 27, 2006**:  The plaintiff apparently received both of the Central Office's Rejection Notices on March 27, 2006.  Plaintiff made the following handwritten notation on both of the Rejection Notices from the Central Office:

> Didn't receive in mail until 3/27/06
> Mailed back out 4/03/06
> * Different Remedy I.D. Numbers

[Record No. 5-2, pp. 16 and 17; Record No. 37-2, p. 9].

(7)      **April 3, 2006**:  Following the two March 21, 2006, Rejection Notices from the Central Office, the plaintiff sent a response to the BOP General Counsel/Central Office.  Although

---

[8]  If the Cental Office issued a Rejection Notice in this series entitled # 396597-**A1**, it is not filed in the record.

11

the date at the top of the plaintiff's response is "April 3, **2005**," it appears that the plaintiff probably meant to date his Response "April 3, **2006**."

In that response, the plaintiff appears to explain that he did in fact pursue both the BP-9 and BP-10 administrative appeals. He appears to inform the Central Office that he was attaching his BP-9 and BP-10 responses to his transmittal. His explanation for the "confusion" was that the BOP had erroneously assigned two separate remedy numbers to his filings. [Record No. 37-2, p. 10 and Record No. 5-2, p. 18].

(8)     **April 17, 2006**: Apparently in response to the plaintiff's April 3, 2006 response to the two Rejection Notices, the Central Office again issued a " Rejection Notice," this one marked as Remedy # 407252-**A3**.   In that "Rejection Notice," the Central Office again reiterated its prior conclusion that the plaintiff either had not attempted informal resolution **or** if he had, he had not submitted evidence of his attempt at informal resolution. The plaintiff was instructed to first file a BP-9 with the warden [Record No. 5-2, p. 21].

2. Evaluation of Exhaustion Issues

The Court is of the opinion that the plaintiff's April 3, 2006 submission constituted full and sufficient compliance with the Central Office's March 21, 2006 "Rejection Notice" as to Administrative Remedy series # 396597-A2. Although the plaintiff failed to designate the series number of "396597" on his response, he states in his April 3, 2006 response that he had in fact pursued the prior two steps of the administrative remedy process. He also stated that he was attaching his prior unfavorable rulings to his response. Plaintiff begins his Response to the Rejection Notices by stating:

"In closed {sic} is every Administrative Remedy forms and responses

12

that I got back . . ."

[Record No. 37-2, p. 10 and Record No 5-2, p. 18]

Plaintiff attributes the confusion to the BOP assigning a new claim number to his filings, and the Court must agree with that conclusion. Based on the documentation which the Court has been able to piece together, it appears that the BOP unilaterally decided to assign a new and different administrative remedy number to the plaintiff's April 3, 2006 submission. Although Carolyn Lanphear explains that this was done because the BP-11 submission did not appear to be appeals of the # 396597-F1 and # 396597-R1 denials, the Court disagrees.

Contrary to the BOP's interpretation of the plaintiff's April 3, 2006 submission, the Court finds that the plaintiff's response was a valid, good faith attempt to address the deficiencies referenced in the Central Offices' March 21, 2006 Rejection Notice in series # 396597. Either the BOP has documents which it did not share with the Court, or it overlooked the April 3, 2006 Response in filing its pleadings in this case. Based on what is in the record, and in light of the plaintiff's April 3, 2006 response, the BOP Central Office's action in assigning a new remedy number (# 407252) accomplished nothing but unnecessary confusion and delay.

Again, while Ms. Lanphear refers to the fact that the plaintiff filed "two other BP-11 remedy requests, 407252-A1 and 407252-A3 directly to the Central Office,"[Record No. 25, ¶ 8], **the BOP did not provide copies of those BP-11 requests for the Court's review**. Lacking any additional documentation or better explanation from the BOP, the Court determines that the plaintiff adequately and properly exhausted his Eighth Amendment claims in compliance with *Woodford v. Ngo* when he sent his April 3, 2006 response to the March 21, 2006 "Rejection Notice" in remedy series # 396597.

The Court notes that the United States has rejected the plaintiff's attempt to settle his claims for the sum of $4,500,000.00 [*See* Record Nos. 40 and 41]. The parties and the Court have devoted much time to the issue of exhaustion, and the BOP has not shown a conclusive lapse in the process. The BOP should proceed to address the merits of the plaintiff's claims after the defendants are served with the complaint.

### 3.  FTCA CLAIMS

The BOP disputes that the plaintiff filed an FTCA claim. The Court questions that argument in light of the letters from Cheryl White, Phyllis Pyles, and Michelle Fuseyamore [Record Nos. 37-2, pp.14,15 and 19]. The United States will be required to respond to the plaintiff's FTCA claim.

### CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The United States' "Motion to Dismiss or in the Alternative, Motion for Summary Judgment" [Record No. 24] is **DENIED**.

(2) The "Motion to Grant Relief of Unspecified Monetary Damages and Release from Custody" [Record No. 37] filed by Plaintiff Toma Yourvanno Bates is **DENIED**.

(3) The plaintiff's "Demand for Jury Trial" [Record Nos. 32 and 42] are **HELD in ABEYANCE** pending further orders of the Court.

(4) The defendants are directed to file a response to both the plaintiff's Eighth Amendment *Bivens* claims **and** the plaintiff's FTCA claims of negligence.

(5) The London Clerk is directed to issue summons (a) Louis Elwood, "Senior Staff Member" at FCI-Manchester; (b) Gary Price, "Staff Member" at FCI-Manchester; and (c) M. Corona, "Factory Manager Trainee" at FCI-Manchester the Bureau of Prisons.

(6) The London Clerk's Office shall prepare as many copies of the complaint as there are summonses issued and complete the requisite number of United States marshals ("USM") Form(s) 285.

(a) If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding any defendant, the Clerk shall promptly make a clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service.

(b) The London Clerk's Office shall forward to the Lexington USM, by certified mail, the following documents: (i) the summonses issued; (ii) the requisite number of USM Forms 285; (iii) the requisite number of complaint copies; (iv) the requisite number of copies of this Opinion and Order; and (v) any other documents necessary to effectuate service.

(c) The London Clerk's Office shall enter the certified mail receipt into the record and a notation that the delivery to the USM Office of the complaints, summonses, USM Forms 285, and any other attachments, has been effectuated, and the date upon which they were effectuated.

(d) The USM Office shall serve a summons, complaint copy, and copy of this Order on the defendants to this action; service to be made by certified mail, return receipt requested, or by personal service.

(e) The USM Office shall make a return report to the Court of whether the summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order. This report shall include a copy of the green card showing proof of service or a statement that a green card was not returned from the U.S. Postmaster, along with a track and confirm from the

15

U.S. Postal Service showing that a proof of delivery does not exist.

(7) The plaintiff shall keep the Clerk of the Court informed of his current mailing address. **Failure to notify the Clerk of any address change may result in a dismissal of this case**.

(8) For every further pleading or other document he wishes to submit to the Court for consideration, the plaintiff shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. **The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel.**

**If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk, or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.**

Dated this 25th day of September, 2007.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge