UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:06-CV-539-KKC

TOMA YOURVONNO BATES                                             PLAINTIFF

VS:                      **MEMORANDUM OPINION AND ORDER**

LOUIS ELWOOD, ET AL.                                            DEFENDANTS

Currently before the Court for consideration are the following pleadings:

(1)     The "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment"
[Record No. 61], filed by the defendants, the United States of America, and federal officials
Mario Corona, Louis Elwood and Gary Price;

(2)     The "Motion to Grant Compensatory and Punitive Damages" [Record Nos. 74
and 81] filed by Toma Yourvanno Bates,  the *pro se* plaintiff;[1]

(3)     The "Exhibit Evidence"[Record No. 82] filed by Plaintiff Bates; and

(4)     The "Judgment Inquiry" [Record Nos. 83 and 84] filed by Plaintiff Bates.

PROCEDURAL HISTORY
1. The Complaint

Bates is currently confined in the United States Penitentiary located in Florence, Colorado
("USP-Florence").  On December 8, 2006, he filed a  *pro se* civil rights complaint, asserting
claims under:  (1) 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six
Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and (2) the Federal Tort Claims Act

---

[1] Plaintiff's submissions, filed as Record Nos. 74 [April 4, 2008] and 81 [May 13, 2008], are identical to
each other.

("FTCA"), Title 28 U.S.C. §§1346(b), 2671-2680.  The events about which the plaintiff complains occurred while he was confined in the Federal Correctional Institution in Manchester, Kentucky ("FCI-Manchester").

Bates named as defendants:  (1) Louis Elwood, whom the plaintiff identified as "Senior Staff Member" at FCI-Manchester; (2) Gary Price, whom the plaintiff identified as a "Staff Member" at FCI-Manchester; and (3) "M." Corona, whom the plaintiff identified as "Factory Manager Trainee" at FCI-Manchester. [2]

Plaintiff alleged that on September 12, 2005, another FCI-Manchester inmate physically assaulted him with hammer and that as result of the assault, he has sustained serious bodily injuries.  The plaintiff was working at his UNICOR job at FCI-Manchester on that date.[3]

Bates claimed that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. He alleged that the named defendants were recklessly indifferent to his health and safety by failing to provide a safe working environment and failing to take measures to prevent the assault (*i.e.*, ensuring that the inmate who assaulted him had no access

---

[2] The United States has filed sworn statements from the three defendants which clarify the defendants' names and their names positions on September 12, 2005: (1) Defendant Mario Corona, UNICOR Factory Manger Trainee; (2) Louis Elwood, UNICOR Foreman; and (3) Gary Price, Fabric Worker Supervisor [*See* Record No. 68, Sealed Declarations]. The Court directed that other sensitive materials offered by the United States would also be sealed [*See* Orders, Record Nos. 66 and 67].

[3] The Bureau of Prisons ("BOP") has established a work program, through which certain qualified federal inmates are allowed the opportunity to participate in prison work programs.  28 C.F.R. § 345.10. The program is known as the Federal Prison Industries, Inc., ("FPI")   The FPI is a government corporation organizationally within the BOP whose mission is to provide work simulation programs and training opportunities for inmates confined in federal correctional facilities. *See* 28 C.F.R. § 345. 11(a).

The commercial or "trade" name of the FPI is UNICOR.  Most FPI factories or shops are commonly referred to as "UNICOR."  The Superintendent of Industries ("SOI"), also referred to as Associate Warden/Industries and Education, is responsible for the efficient management and operation of a FPI factory.  28 C.F.R. § 345.11(b).

2

to a dangerous implement such as a hammer).  He further alleged that the defendants denied him

prompt and necessary medical treatment for his injuries.  He claims that he continues to suffer

numerous and severe physical injuries as a result of the assault by the other inmate.

Additionally, the plaintiff asserted a claim of negligent supervision under the FTCA.

The United States is the proper defendant to a claim asserted under the FCTA. *Allgeier v. United

States*, 909 F.2d 869 (6th Cir. 1990). The plaintiff sought unspecified monetary damages and

release from custody.[4]

### 2. The United States' Motion to Dismiss [Record No. 61]

The United States asserts four grounds justifying dismissal. First, it argues that because

Bates' injury occurred at work, this Court lacks subject matter jurisdiction over the plaintiff's

*Bivens* and FTCA claims.  Citing *United States v. Demko*, 385 U.S. 149 (1966), and *Fraley v.*

*Department of Justice, et al.*, 113 F.3d 1234 (6th Cir. 1997) (Table), the United States contends

that because Bates sustained his injury during the course of UNICOR employment, all claims

stemming from that injury- - including all post-injury medical claims-- are compensable only

under the Inmate Accident Compensation Act, 18 U.S.C. § 4126 ("IACA").

Second, the United States argues that assuming the IACA does not bar the plaintiff's

negligence claims , jurisdiction under the FTCA would still be absent under the "Discretionary

Function Exception" to the FCTA, codified in 28 U.S.C. § 2680(a).   The DFE prevents claims

for negligence under the FCTA where the claim is "based upon the exercise or performance or

the failure to exercise or perform a discretionary function or duty on the part of a federal agency

---

[4] In his May 13, 2008 filing [Record No. 81], the plaintiff demanded $39,000,000.00 in compensatory damages and $6,000,000.00 in punitive damages [Record No. 81-2, p.2].

3

or an employee of the Government, whether or not the discretion involved be abused." *See* § 2680(a).

Third, the United States alleges that Defendants Corona, Elwood and Price are entitled to summary judgment on other grounds. The United States asserts that the plaintiff has failed to meet the subjective element of an Eighth Amendment claim, both on the issue of failure to protect and on the claims regarding inadequate medical care.

Fourth, citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the United States asserts that the defendants are entitled to qualified immunity. In *Harlow*, the Supreme Court held that federal officials are entitled to qualified immunity from suit for violations of constitutional rights insofar as their conduct does not violate clearly established law. As long as there is a "legitimate question" about the constitutionality of particular conduct, "it cannot be said that . . . such conduct violates clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511 (1985). The standard for qualified immunity was set forth below by the Court in *Harlow*:

> [G]overnment official[s] performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate established statutory or constitutional rights of which a reasonable person would have known.

*Harlow*, 457 U.S. at 818.

The United States construed the complaint as asserting challenges to: (1) the BOP's decisions relating to the assignment of work details; (2) the BOP's decisions relating to security at the inmate work site; (3) the BOP's decisions relating to classification and separation of inmates; and (4) the BOP's decisions relating to assignment of tools at the UNICOR work site. The United States argued at length that all of the actions about which Bates complained,

4

including the allegation that the BOP had failed to protect him from potential harm posed by the inmate who had struck him with the hammer, were decisions which had been left to the full and complete discretion of BOP officials.

The government argues that Defendants Corona, Elwood and Price had no reason to suspect any animosity between Bates and the inmate who struck him with the hammer. Accordingly, the government contends that these defendants had no notice of any imminent danger to Bates at the hands of the other inmate and thus no reason to take preventative measures to keep the two apart.

In support of its argument that no issue of fact exists with respect to Bates' Eighth Amendment claims, the United States has submitted the sworn Declarations of the three defendants who were employed in various capacities in the UNICOR Factory at FCI-Manchester September 12, 2005.[5]  The defendants contend that their involvement in the September 12, 2005 altercation between Bates and the other inmate at the UNICOR work-site was limited to attempting to separate Bates and the other inmate when the physical altercation ensued.

All declare under oath that they were unaware of either the animosity (such as staring and pointing contests) between Plaintiff Bates and the other inmate, or the potential for the two inmates to become involved in a physical altercation.

The United States argues that to the extent the FTCA could be applicable, the plaintiff has failed to demonstrate that the defendants were negligent under Kentucky law. It reiterates its contention that the assault on Plaintiff Bates by the other inmate was not foreseeable.

---

[5]  The three Declarations are filed under seal pursuant to the Order entered on March 10, 2008 [Record No. 66].  The three Declarations are filed collectively as Record No. 68.

### A. Mario Corona

Corona states that there were no official UNICOR separation classification requirements which would have put him, or any other UNICOR manager, on notice of any problems between the Bates and the inmate who struck him., [Record No. 68, ¶ 5]. He states that both inmates were both properly employed in UNICOR and were scheduled to work together [*Id*.]. Corona states that the problems between the two inmates were not reported by anyone to any FCI-Manchester staff members until after the September 12, 2005 altercation ensued [*Id*., ¶ 6].

Corona states that to the best of his knowledge, all UNICOR and BOP regulations were followed with respect to the placement of Bates and the other inmate the UNICOR program at FCI-Manchester [*Id*., ¶ 7]. Corona states although he is aware that Bates received medical attention as a result of the September 12, 2008 incident, he had no involvement with Bates' medical care after the September 12, 2005 altercation [*Id*.].

On the issue of the discretion and with which he and the other defendants were vested in UNICOR, Corona states that he and other UNICOR/BOP staff members enjoy complete discretion in the following matters: prisoner work assignment decisions (including the plaintiff and the other inmate); assignment of tools; cleaning of tools; workplace security; and inmate security and separation [*Id*., ¶ 8]. Corona explains that the discretionary decisions which he and other UNICOR/BOP staff members make on these issues are driven by policy considerations which consist of budgetary concerns, sanitation, inmate population and characteristics, scheduling, and access to tools [*Id*.].

## B. Louis Elwood

Defendant Elwood states that he observed Bates run up to the other inmate and strike him on the lower right arm and hand with a broom stick [Elwood Decl., Record No. 68, ¶ 3]. He noticed that when the altercation occurred, Bates was bleeding from the head and that there was blood on his shirt [*Id*.]. Elwood states that Bates struck him (Elwood) as he (Elwood) attempted to break up the fight. Bates ignored Elwood's demands to cease fighting and to lie down on the floor [*Id*., ¶ 4].

Elwood states that contrary to his demands, Bates continued to assault the other inmate by throwing a chair and attempting to strike that inmate with closed fists [*Id*., ¶¶ 5-6]. Elwood states that only after other staff arrived on the scene were they able to restrain Bates and the other inmate, then remove them to the Special Housing Unit [*Id*., ¶ 5].

Like Defendant Corona, Defendant Elwood asserts that at the time of the September 12, 2005 altercation between Bates and the other inmate, he had no knowledge of any problems or issues between the two inmates. He asserts that he had no grounds to suspect, through official BOP reporting channels or otherwise, any reason for violence between the two [*Id*., ¶ ¶ 6-7].

Finally, he states that he is aware that Bates was treated in the clinic after the altercation, but he disclaims any involvement in Bates' medical care after the incident [*Id*., ¶ 8].

## C. Gary Price

Gary Price states that on September 12, 2005, he observed Bates running down the center of the factory with a mop or broom handle in his hand [Price Decl., Record No. 68, ¶ 2]. Price states that he heard Bates say "Gonna get you, white boy!" [*Id*]. Price states that he also

observed the other inmate running through the factory with a hammer in his hand [*Id*.]. Price disclaims knowledge of any animosity between Bates and the other inmate [*Id*., ¶ 3]. He alleges that no one reported the existence of a dispute between Bates and the other inmate, and that he had no knowledge what caused the altercation between the two inmates  [*Id*., ¶¶ 3-4].

According to Price, all UNICOR and BOP regulations, policies and procedures were completely followed with respect to inmate safety and security at the time relevant to this action [*Id*., ¶ 5]. Price states that he had no involvement with Bates' medical care after he was taken to the prison's clinic on September 12, 2005 [*Id*.].

### 3. Plaintiff's Response to Motion [Record Nos. 74 and 81]

In response to the United States' motion, the plaintiff filed a "Motion to Grant Compensatory and Punitive Damages"[Record No. 81].[6]  In that submission, Bates disputes that he sustained a "work-related" injury which would fall under the auspices of the IACA.

Summarized, Bates contends that his injury is the result of an intentional tort inflicted by another inmate which just happened to have occurred while he (Bates) was on work status. Bates alleges that the defendants allowed the other inmate gain access to a hammer to which he should not have been allowed access. Bates re-states the allegations of his prior submissions: that Defendants Elwood, Corona and Price were inattentive to their duties.  He alleges that they were negligent in failing to properly supervise the inmates, and the dispensation of potentially dangerous tools, in the UNICOR area on September 12, 2005.

Bates alleges generally that the named defendants should have known that the other

_____

[6] Bates has filed supplemental filings which contain essentially no additional information [*See* Record Nos.82 and 83].

inmate was a threat to his safety, and that they should have prevented the other inmate from having access to the claw-hammer [*Id*., p.5]. However, Bates' does not set forth in his Response *how* the defendants should have known about the imminent threat which the other inmate posed to him. Bates does not provide any specific information which would indicate that the defendants were, or should have been, on notice of a problem brewing between him and the other inmate.

Alternatively, Bates alleges that the defendants' acts and omissions with respect to supervisory duties and assignment of UNICOR tools violated his right under the Eighth Amendment to remain free of cruel and unusual punishment.

DISCUSSION
1. Standards for Dispositive Motions

Federal Rule of Civil Procedure 12(b)(6) provides for a defendant to move for dismissal for a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, a court will take well pled allegations as true and construe them most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976).

Rule 12(b)(6) continues, in pertinent part, as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made

9

pertinent to such a motion by Rule 56.

*Id*. Thus, the plain language of the rule requires that if the Rule 12(b)(6) motion has attachments which the Court considers, such as the declarations herein, then the motion "shall" be converted into a motion for summary judgment pursuant to Rule 56.  *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).

Here, the Court has considered the sworn declarations submitted by the United States. Accordingly, the Court must also examine the standards for summary judgment.  Summary judgment should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c) (2007). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).  The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

10

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25. After the moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23. With these standards in mind, the Court turns its attention to the Defendants' motion.

## 2. Negligence Claims Under the FTCA

The plaintiff asserts claims under the FCTA. He alleges that the prison staff negligently supervised UNICOR employees and that they failed to ensure that UNICOR employees had limited access to tools which could be used as dangerous weapons in the prison workplace.

The United States contends that the injuries suffered by Plaintiff are work-related as contemplated by the IACA [7] Bates contends that because his injuries were the result of an intentional assault by another inmate, § 4126 does not preempt his claims under the FTCA.

The IACA is the exclusive means of recovery for a federal prisoner injured in the performance of an assigned task while in a federal penitentiary, *United States v. Demko*, 385 U.S. 149, 87 S.Ct. 382, 17 L. Ed.2d 258 (1966); *Aston v. United States*, 625 F.2d 1210, 1211 (5th Cir.1980). Here, there seems to be no dispute as to whether the IACA provides the exclusive remedy for work-related inmate injuries. Rather, the dispositive issue is whether the

---

[7] "Work-related injury" is defined by the relevant Department of Justice regulations as "any injury ... proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.302.

injuries which Bates sustained on September 12, 2005 are properly considered "work-related."

The Court agrees with the United States that Bates' injuries were in fact work-related. The FTCA does not apply here, because the plaintiff's claims were sustained during the course of his UNICOR employment.  Notwithstanding the fact that another inmate struck Bates with a hammer, his claims fall squarely under the IACA  *See Gomez v. Warden of Otisville Correctional Facility*,  2000 WL 1480478, 3 (S.D.N.Y.,2000).  According to the unambiguous holding of *Gomez*, there is no exception to this provision where a plaintiff's injuries result from an intentional tort or action caused by another person.

*Gomez* involved a legal argument somewhat similar to the instant proceeding. Plaintiff Gomez was working as an orderly in the Otisville Correctional facility.  Gomez had just finished cleaning, wet mopping and waxing the floor in one area of the facility  when a prison officer directed him to move to another area [*Id*., at *1].  Gomez was required to traverse the wet and freshly waxed floor area in order to reach the new location.  The officer ordered Gomez to "move" and "keep moving" across the slick floor to the other location [*Id*.].  Gomez slipped on the floor, fractured his leg, and sustained a permanent injury with pain and suffering [*Id*.].

Like Plaintiff Bates, Gomez had argued that he could assert a negligence claim for his injuries under the FTCA.  Gomez further asserted claims under *Bivens*, arguing that to the extent that the prisoner officer had ordered him to "move" and "keep moving" across a wet floor, the officer had intentionally assaulted him [*Id*., at *2].

The district court soundly rejected Gomez' attempt to assert negligence claims under the FTCA [Id. at *3].  Citing *Demko*, 385 U.S. at 152, the court emphasized that the IACA is the

exclusive means of recovery against the government for a federal prisoner's work-related injuries, and bars a suit for damages for such injuries under the FTCA.  *See Gomez*, at *3. The *Gomez* court noted that only inquiry is whether the injury was sustained while the inmate was working on the job.  If the injury was sustained while the inmate was working at his prison job, the IACA - not the FCTA- applies. Concluding that Gomez sustained his injuries while working on the job, the court stated as follows:

> "In this case, plaintiff's injuries occurred while he was working as a prison orderly and were proximately caused by the performance of his assignment. They are clearly work-related within the meaning of the applicable regulations, notwithstanding the fact that he alleges they resulted from the conduct of a prison official. *See* 28 C.F.R. § 301.102(a) (stating that "the term 'work-related injury' shall be defined to include any injury ... proximately caused by the actual performance of the inmate's work assignment"); *Wooten*, *supra*, 825 F.2d at 1044-45 (finding that prisoner could not recover under the FTCA even though prison officials allegedly ordered him to do work that aggravated his pre-existing back condition); *Lutrell v. United States*, No. 93 C 5226, 1994 WL 605746, at *2 (N. D. Ill. Nov. 3, 1994) ("[T]he cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job.") (quoting *Aston v. United States*, 625 F.2d 1210, 1211 (5th Cir.1980)).

*Gomez*, 200 WL 1480478 at * 2.

The court rejected Gomez's argument because that his injuries were the result of an intentional act, the FTCA applied and the IACA did not apply.  *Gomez* expressly held that there is no exception to the IACA where a prisoner-plaintiff's injuries result from an intentional tort, noting that § 4126 does not distinguish between actions based on intentional tort and those grounded in negligence. *Id*.[8]

---

[8]  The court explained it decision as follows:

In addition, courts have held that an analogous statute, which establishes a workers' compensation scheme for federal employees, the Federal Employee Compensation Act ("FECA"), 5 U.S.C. § 8101

The *Gomez* decision distinguished the case of *Barber v. Grow*, 929 F. Supp. 820 (E. D. Pa.1996), on which Prisoner Gomez had relied.  In *Barber*, an inmate asserted FTCA and *Bivens* claims alleging that he was intentionally injured when a prison guard pulled a desk chair from under him while he was working. Relying on *Scott v. Reno*, 902 F. Supp. 1190, 1193 (C. D. Cal.1995), that court held that the *Bivens* claim was not precluded by Section 4126, because "[a]t least one authority has held ... that this statute does not apply to injuries sustained as a result of intentional conduct." *Barber*, 929 F. Supp. at 822 (citing *Scott* ).

*Gomez* specifically rejected the holding of *Barber*, holding that § 4126 does in fact control claims related to prison workplace injuries, even though they may have been intentionally committed by another person.  In fact, the *Gomez* court concluded that *Barber* was wrong and the result of an overly broad interpretation of the *Scott* decision.[9]

---

et seq., bars federal workers from suing the Government under any other law for work-related injuries, including suits grounded in intentional tort. *See Heilman v. United States*, 731 F.2d 1104, 1110 n. 6 (3d Cir.1984) ("If FECA is applicable, therefore, i.e., if the injury is suffered in the course of the employee's duty, then it would not matter whether the cause of the injury was an intentional or negligent act. The fact that a tort is intentional certainly does not preclude it from being suffered while in the performance of a public employee's duty."); *Green v. Hill*, 954 F.2d 694, 697 (11th Cir.), modified on other grounds, 968 F.2d 1098, 697 (11th Cir.1992) (finding FECA was exclusive remedy to federal employee alleging assault and battery on the job, and stating that "[t]he FECA covers liability created both by negligent and intentional acts of the Government"); Armstrong v. A.C. & S., Inc., 649 F. Supp. 161, 163 (W.D.Wash.1991) (stating that "FECA precludes the United States from having tort liability [under the FTCA], including liability for intentional torts") (citing *Yam v. United States*, No. 82-4525 (9th Cir. May 11, 1983) [709 F.2d 1520 (table)]).

[9]  The court in *Gomez* criticized the *Barber* decision as follows:

"Presumably guided by the same rationale, the *Barber* court further considered the merits of the plaintiff's FTCA claim against the prison guard. *See id*. at 823-24. However, the *Scott* court did not make the broad statement that the *Barber* court attributes to it, and moreover, rejected the argument of plaintiff in this case. Although the *Scott* court held that Section 4126 did not bar an inmate's *Bivens* action, it made clear that prisoners were precluded from suing in tort under the FTCA for work-related injuries. *See Scott*, 902 F. Supp. at 1193.

Accordingly, plaintiff's reliance on Barber for the proposition that *an inmate* alleging intentional

14

Based on *Gomez*, the Court concludes that the injuries which Plaintiff Bates sustained on September 12, 2005 were in fact work-related.   They were sustained while he was engaged in UNICOR employment.   As such, all of Bates' claims under the FTCA are barred by § 4126 of the IACA, as well as *Demko* and its progeny. As the Court determines that the FTCA does not apply, it is unnecessary to consider the parties' discussion of the DFE.

## 2. <u>Eighth Amendment *Bivens* Claims</u>

The plaintiff alleges that Defendants Corona, Elwood and Price failed to detect a threat to his safety and act upon that threat, either by separating him from the other inmate in the UNICOR work area, or by taking steps to ensure that the other inmate had no access to a potentially dangerous tool.

Bates alleges that these omissions amounted to either reckless or deliberate indifference to his safety and were the cause of his physical injuries.   As noted earlier, Defendants Corona, Elwood and Bates allege in their sworn Declarations that they were aware of no facts or circumstances (either formally or informally) which would have put them on notice of Bates being in any potential harm from the other inmate.

The Eighth Amendment prohibits prisons from inflicting cruel and unusual punishment on prisoners. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994) (citations

---

conduct may sue under the FTCA for work-related injuries is unavailing. Such suits are barred whether the injuries resulted from negligent or intentional tortious conduct by a prison official. Because the Court does not have subject matter jurisdiction over plaintiff's FTCA claim, that claim must be dismissed."

*Gomez,* 2000 WL 1480478 at *3.

omitted). The Eighth Amendment does, however, impose a duty on prison officials to protect prisoners from violence at the hands of other prisoners. *Id*. at 833.

The case of *Savocchio v. Crabtree*, 1999 WL 562692 (D. Or.1999) provides a good synopsis of Eighth Amendment claims of this type.  That court stated as follows:

> To prevail on an Eighth Amendment failure-to-protect claim, an inmate must satisfy both an objective and a subjective requirement. First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." [*Farmer*, 511 U.S. at 834, 114 S.Ct. at ----] The Supreme Court specifically left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id, n3.

> And second, the prison officials must have acted with deliberate indifference to prisoner health or safety. *Id* at 834. "Deliberate indifference" is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837....

> However, prison officials avoid liability if "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844. "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' " not absolute safety. *Farmer*, 511 U.S. at 844, citing *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L. Ed.2d 22 ... (1993)."

> *Savocchio v. Crabtree*, 1999 WL 562692, at *5.

Applying these standards, the Court first considers if Bates has demonstrated that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. This is an objective standard which must be based upon more than his subjective fear. Second, Bates must prove that the BOP acted with deliberate indifference to his health or safety. If Bates' fears were not justified or if the BOP's actions were reasonable, he has no Eighth Amendment claim.

16

The Court has carefully reviewed the plaintiff's pleading [Record No. 81] filed in response to the "Motion to Dismiss." Bates alleged in that filing that Defendants Corona, Elwood and Price should have been aware that he (Bates) was in imminent fear of physical harm from the other inmate and that they should have taken measures to prevent the assault.[10]

None of Bates' filings, including his most recent Response, provide any insight or information as to just how Defendants Corona, Elwood and Price could have ascertained that Bates was in such imminent danger. Bates does not allege that he had lodged prior complaints to any prison officials advising them that he was afraid of the other inmate or that the other inmate had threatened to harm him *prior* to September 12, 2005.

Bates reiterates that he continues to suffer physical harm as result of the incident. He alleges that the defendants could have taken preventative measures to keep him separated from the other inmate in UNICOR. He alleges only that the defendants failed to preemptively separate him from his secret adversary, and that they failed to restrict his adversary's access to dangerous tools from the UNICOR work area.

The defendants have alleged under oath that they had no reason to be concerned about Bates' safety at the hands of the other inmate. They state that they saw no need to protect Bates while he and the other inmate were both employed in the UNICOR area of the prison on September 12, 2005. Bates' response fails to counter the defendants' sworn statements, and is nothing more than a lengthy recitation of the fact that he was injured on September 12, 2005.

---

[10] Bates made similarly broad assertions in a motion filed on June 4, 2007 [Record No. No. 37, pp. 1-2] and in his initial complaint [Record No. 1].

17

The Court finds that Plaintiff Bates has failed to satisfy the first prong of the inquiry, which is the objective standard. Bates has failed to show (or even allege) that the defendants had any way or reason to know that prior to September 12, 2005, he was in danger of physical harm at the hands of the other inmate while they were both employed in the UNICOR work area. The plaintiff's response does not contain any facts which would explain why the named defendants should have taken the evasive actions Bates now says were warranted.

While Plaintiff Bates may have been subjectively aware that he and the other inmate were having stare downs, arguments, issues or disagreements, he has alleged nothing in his filings which would indicate that such disputes were objectively obvious to *third parties*, such as Defendants Corona, Elwood and Price. Plaintiff Bates and the other inmate later confessed to prison officials *after* the September 12, 2005, incident that they were having disagreements. The revelation of that information (after-the fact) is not a sufficient basis for concluding that the defendants should have known that the two inmates were involved in a dispute or argument *before* the incident.

Given these facts, the Court further finds that the second prong of the Eighth Amendment analysis also cannot be satisfied. The defendants did not act unreasonably given that they lacked information about the dispute between Bates and the other inmate. They had no reason to separate the two inmates or to prevent the other inmate from having access to a hammer.

The plaintiff has failed to carry his burden or demonstrate a genuine issue of material fact on his Eighth Amendment claim of either deliberate or reckless indifference to his safety. *See Farmer v. Brennan*, 511 U.S. at 834; *Estelle v. Gamble*, 429 U.S. at 102-03.

18

Additionally, the defendants explain in their respective Declarations that after Bates was removed from the UNICOR work area on September 12, 2005, they had no involvement in his medical treatment. A claim under *Bivens* requires a showing that the named defendant performed the acts that resulted in a deprivation of a constitutional right. *See Rizzo v. Goode*, 423 U.S. 362, 375-76, 96 S.Ct. 598, 46 L. Ed.2d 561 (1976); *Bivens*, 403 U.S. at 390 n. 2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir.1998).

The plaintiff's Response does not contain any factual assertions indicating that the defendants were personally involved in his medical treatment or knowingly acquiesced in any unconstitutional conduct on that issue. Here, Bates does not allege facts which would indicate that the defendants were personally responsible for, or knowingly acquiesced in, any unconstitutional conduct. *See Rizzo v. Goode*, 423 U.S. at 373-77; *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983).

As the Supreme Court dictated in *Celotex*, summary judgment is justified "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

The Court determines that upon review of the record, summary judgment in favor of Defendants Corona, Elwood and Price on both of the plaintiff's Eighth Amendment claims (failure to protect and failure to provide adequate medical treatment) is warranted. The plaintiff's claims are dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); 28 U.S.C. §1915(e)(2)(ii).

19

<u>CONCLUSION</u>

Accordingly, **IT IS ORDERED** as follows:

(1)     The United States' "Motion to Dismiss or in the Alternative, Motion for Summary Judgment" [Record No. 61] is **GRANTED**.

(2)     The "Motions to Grant Compensatory and Punitive Damages" [Record Nos. 74 and 81] filed by Plaintiff Toma Yourvanno Bates are **DENIED**.

(3)     This action is **DISMISSED WITH PREJUDICE** and Judgment shall be entered contemporaneously with this Order in favor of the named defendants.

Dated this 16th day of July, 2008.

**Signed By:**

_**Karen K. Caldwell**_  *KKC*

**United States District Judge**